TeeeMAN., J.,
delivered tlie opinion of tbe court:
This is an action of ejectment for a tract of land !n Dyer county containing 997 acres. '*
Plaintiff claimed title under a deed from the Union Bank of Tennessee, of date July 25, 1865, conveying this land in trust to him for the benefit of its creditors. This deed was registered in Dyer county on the twenty-second of September, 1875.
Defendant Moss claims to have the title of said bank by virtue of various tax sales and deeds made under the same by the tax collectors, or their successors who made said sales.
The question, then, between plaintiff and defendant is, *318 which has the title of the bank, both claiming to have it, and both deriving whatever title they have from this common source. This relieves ns from the examination of the chain of title and objections made to it by the defendant, under the rule stated in the case of Wortham et al. v. Cherry, 3 Head, 470, that “where both parties claim title under same third person, it is sufficient to prove the derivation of title from him without proving his title.”
The defendant here derives his title, whatever it may be, from the bank, and plaintiff claims his from the same source. The source of the title being the same, the only question, as we have said, is, who has the title o'f the banld
Wo do not consider it necessary to fortify this rule by authorities. It has so often been approved by-this court-in fact, was so approved in a contest for this very land in 1874, opinion by Judge Deaderick [C. C. Moss v. Union Bank, 7 Bax., 216]-as not now to require further discussion.
The question remains whether defendant, by virtue of the tax title he presents in this record, has the title of the bank.
The first of three deeds introduced by defendant is one by B. M. Tarrant, dated March 5, 1861, who was then collector of taxes for Dyer county, and is based on a sale made by Wm. M. Watkins, in 1859, for taxes assessed against this land in 1858.
The next two deeds are made by T. H. Benton, who was tax collector in 1871, one on sale purporting to have been made by Tarrant, who was tax collector in 1860-61, deed made January 13, 1872; the other, of same date, on sale made by TIassel, sheriff and tax collector of Dyer county in 1859.
The recitals of these deeds for the present may be assumed to be full, so far as the facts are required by our statute to be stated in the deed of a collector of taxes. They do not purport, nor are they made by the officer who made the sales, but by successors, or subsequent tax col *319 lectors. There is nothing to support these deeds; that is, no evidence of a report of the land for unpaid taxes, nor order of condemnation and sale, nor any advertisement, In a word, they stand on their recitals as evidence of the facts necessary to make a valid sale, and, it is insisted, are to be taken as prima facie evidence of the existence of the facts recited in them, by virtue of secs. 627, 628, 640, and 641 of the Code. The first two sections simply provide the requisites of a valid sale for taxes taken from the act of 1843, ch. 92, and make the collector’s deed reciting their existence prima facie evidence" of the facts. These sections, in terms, apply only to the collector who makes the sale, and cannot be extended to the deed of his successor. But by sec. 640 it is provided: “The collector selling the land, or any of his successors, may make a deed to the purchaser, or to any person to whom the purchaser directs the deed to be made after the time of redeemption has expired.” This is all very clear, and simply gives authority to the successor, or any successors being in office, to make a deed when 1he collector who sold the. land has failed to make a deed as required by law.
Section 641 provides: “The collector, in executing said deed shall only be required to recite the compensation paid, such description of the land to be conveyed as will identikit, the judgment upon which the sale was made, and the date thereof, in what court it was rendered, the fact of legal notice having been given, and the sale and date of the sale of the property. And in all cases where these requisites are complied with, and are recitqd in the deed, the same shall bo good and effectual between the parties.”
These sections, taken together, fairly construed, can only mean that the collector or his successor may make a deed. But when the requisites of a good deed, to be effectual between the parties, are considered, the language is “the collector, in executing the deed”- — that is, the collector selling the land referred to in the preceding section; *320 for if it was intended to apply to a successor, it would have been "the collector or his successor.”
It has long been settled that the recitals of the deed of the officer making the sale are evidence of their truth, as in case of a sheriff, but at the same time it is equally well settled that a deed of a successor of the sheriff, or one who did not make the sale, is not evidence of the truth of its recitals. The reason of the rule is obvious. In the one case the act is done under oath by the officer, and is a recital of facts within his own knowledge; in the other case the act is done by another, and he has no personal knowledge, nor was it his own official act.
By secs. 3056 and 3058 of the Code [Shannon’s Code, secs. 4183 and 4785], it is provided that a successor in office of any sheriff, coroner, or collector shall make a deed for land sold, and the latter section provides "which deeds shall be as valid as if executed by such former officer.” Act of 1809, ch. 84, sec. 1. Yet it was never held that the recitals, such as of notice as required by law, should be effective as evidence when made by the successor. -Such a rule would be to require the successor to state the facts under oath officially, which is the reason for making them effective, as evidence, which he is totally unable to do, having no personal knowledge of them, or else it would be to make the statements of a party of facts about which he could and did know nothing whatever, equal to the statement under oath of one who did know them. This would be absurd. Ho such innovation on principle was intended, and nothing of the kind should be held as an inference, unless the language was too clear to admit of doubt. In this case the language of the statute is confined to the deed of the collector, hnd not to his successor. Reason, sound policy, and precedent require that it shall not be extended beyond its words in the direction indicated. If such a rule were established, it- is perfectly easy to see how any purchaser at a tax sale can always have the evidence of a good title from a successor. He has but to prepare one contain *321 ing all required facts io make a good title, present it to the successor, who cannot object to signing, as he is required to do by law, and cannot object to one recital more than another, because lie knows nothing of the truth of any of them, and the work is done, a good prima facie title made out, although it may be that not a single material recital in the deed is true, bio such view as this can be sustained or adopted by any court consistent with either established principle or sound policy. Other objections fatal to the effect of these deeds might be pointed out, but this suffices. They may be left out of the discussion as mu-niments of title in defendant.
The next question is as to a tax deed made by John H. York, tax collector of Dyer county, or purporting to be such, made to defendant on the thirteenth day of January, 1872. The deed, however, is signed by York as “tax collector for Dyer county, for the year 1869.”
It will be seen that York does not assume, in signing the deed, to be then tax collector of Dyer county, but only signs as tax collector for the year 1869. The deeds of Britton, who was the tax collector at the date of making this deed, show that York was out of office at the time', to wit, thirteenth of January, 1872, the date of the respective deeds. The only question that need be noticed as to this deed is, whether on these facts the collector for 1869, out of office, had authority to make a deed that would convey a title to a purchaser who purchased while he was in office. It is clear he had no such power. Section 640, authorizing the collector selling the land, or any successor of his, to make deeds, only means that if the .collector, while in office, fails to make the deed, then a successor shall do it, but requires it to be made by one or the other of these officers, as an officer in office at the time. Sections 661 and 662 do not help this deed. The first section gives the collector two years from the expiration of his term to collect all arrearage of taxes that aré due and *322 owing for the time for which he was collector. This does not refer to mailing deeds at all. The next section simply provides: “lie may sell lands condemned by the circuit court for taxes due and unpaid, and make titles to the same at any time within'two- years from the expiration of his term of office; and if he fail or neglect to sell such land, then it shall be sold by his successor.”
It is evident this only applies to lands condemned during his term of office, which he has failed for any cause to sell, and was intended to enable him to go on and complete the sale, and thereby collect arrearage of taxes as provided for by the previous section. If he does sell these lands, he is then authorized to make title to the same, but to no other lands whatever. This deed, then, is void, made without authority of law, and communicated nú title io defendant.
The jury found for the plaintiff, under the charge or the court, which may admit of slight criticism in some verbiage, but on the whole was substantially that defendant’s deeds gave him no title, as we have held in this opinion. We can see that the result obtained is the proper one, and that defendant presents no- valid title to this land. Under these circumstances we would not, in any case, reverse for slight inaccuracies, even though they were of more moment than found in the charge before us.
The result is, the judgment is affirmed.